Good afternoon, Council. Thanks for joining us this afternoon by Zoom so we could get this case argued sooner rather than later. We'll go ahead and call the case now. 25-6080 Padres Unidos de Tulsa versus Gentner Drummond in his official capacity as Attorney General of Oklahoma. Council, please proceed. Thank you, Your Honor. May it please the Court. Gary Gaskins for the Oklahoma Attorney General and the other state defendants. This case asks a deceptively simple question. May a state attach state law penalties to conduct that Congress has already made a federal crime? The answer under long-standing Supreme Court precedent and under this Court's own decisions is yes. States routinely do so for fraud, for assault, for drug trafficking, and no one calls it preemption. But isn't the immigration context here precisely what makes this a very different kind of setting? I don't believe so. I think the the Kansas decision, which is the most recent from the Supreme Court on this, puts parameters on what states can do in this fashion. So what was the nature of the offense in Kansas? The offense in Kansas dealt with providing some false information on an INA form. So that sort of, I think, begs Judge Rossman's question. I mean, when you talk about things like providing false information, fraud, assault, murder, robbery, things like that, those are crimes that are well within the state's recognized police power. But at least in the past, say, 150 years, it seems that the states have not delved so much into immigration and that they've left that to the state, or they left that to the federal government. Right. I mean, I would just say first, I mean, first of all, there is no conflict preemption here, right? I think even the plaintiffs can see that it's physically possible to comply with federal law and House Bill 4156. Therefore, there's no traditional conflict. I know the plaintiffs argue, which the district court agreed with, that this bill stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. But I think the Kansas case, though, forecloses that reasoning because the court there plainly held, quote, the possibility that federal law enforcement priorities might be upset is not enough to provide a basis for preemption, that only federal law has preemptive effect, and the criminal law enforcement priorities and preferences of federal officers do not. There are some differences, counsel, between the sort of the status of federal law right now with regard to some of the things that Oklahoma is purporting to make criminal. For instance, the way I read it, HB 4156 makes it a criminal act just for being present in Oklahoma with an authorization. Not even federal law does that. Federal law does not criminalize mere presence in the country, period. So how is that not something different? How is that not in conflict with federal law? I believe Oklahoma's House Bill 4156 is in lockstep with United States Code Section 1325A and 1326A. I mean, it criminalizes the unlawful entry and unlawful reentry. I'm talking about presence. I'm talking about entry and reentry are in the INA as criminal and are designated as such. I think reentry can even be a felony. But mere presence in the country without authorization, that's not a felony. That's not a misdemeanor, a criminal misdemeanor under federal law. But it is under HB 4156. I disagree. Oklahoma took United States Code Section 1325A and 1326A as the model for House Bill 4156. It provides the same sort of defenses that you would have under federal law. I believe that the Oklahoma law is the very definition of parallel and complementary to federal law. You mentioned defenses. I mean, the defenses seem different. How are they the same? I mean, the Oklahoma statute provides for two, and it seems like federal law has more than two. Would you agree with that? I believe Oklahoma basically says if you are in the United States, legally, you are not subject to this. I mean, Oklahoma, individuals with lawful presence, asylum, DACA status are expressly exempted. I think Oklahoma has taken deliberate steps to ensure its law runs in lockstep with federal law. You mentioned that the conflict preemption issue is an easy one, perhaps. You didn't use that word, but that it's sort of more straightforward. My question for you on that is, how are we to think about the penalties that the Oklahoma law provides for as compared to the penalties under federal law when we're thinking about conflict preemption? Well, I think I would agree that the penalty structure for the Oklahoma law may be slightly different than the federal scheme, but I think that's common in many different criminal statutes where there's one federal penalty for assault, and the state of Oklahoma may have a different one, but I don't think that's ever been held to rise to the level of causing a criminal statute to be preempted. And I'd also point out that, you know, I point out to the dissent by Circuit Judges Strass and Loken and the analogous Eighth Circuit case where they made clear that field preemption is the only doctrine capable of blocking parallel and complementary state regulation as a result from the state's perspective. So why doesn't field preemption block it here? You attempted, I haven't tapped into your briefs at least, to distinguish the case in Arizona versus the United States from this one. And I think the basis for that is that you're pointing out that that was a registration of alien case, and this is a entry and re-entry case, or entry and re-entry statute, focusing on that. But those two things, entry and re-entry, I would say probably, are even more sort of the core function of the federal government than the registration of aliens. So why was the district court incorrect in saying that Arizona versus the United States logically would extend to this case? Well, so we have the Kansas v. Garcia case, right, that was decided eight years after the Arizona case. And there, the U.S. Supreme Court made clear that field preemption arises only in a rare case where Congress has legislated so comprehensively that it has left no room for supplementary state legislation. And the court made equally clear that implied preemption must be grounded in the text and structure of the statute at issue, not in an uprooting federal interest or judicial policy preference. So, you know, a simple single sentence criminal prohibition, 1325A says aliens who enter outside designated ports or entry commit a crime, 1326. There's a whole scheme. I mean, I can't imagine, I can't even think of a federal statute like the INA that is as comprehensive as the INA and as complex as the INA and sort of covers the entire field of immigration law. And this is sort of exactly what the Supreme Court was stating in Arizona versus the United States. I know you keep pointing to the later case, but that case did not deal with sort of a similar situation that we have here. Here we are dealing with plaintiffs who are challenging the state enactment of an immigration law. That's not the case. That wasn't the case in the Kansas case, right? That was more akin to Arizona versus the United States. I would say though that Kansas is instructive where it requires the courts to identify the field in which preemption is said to have occurred at an appropriate level of specificity and unlawful entry and reentry is a distinct subset of immigration regulation, just as alien registration was treated separately in the Arizona case. And at that level of specificity, the federal prohibitions in 1325A and 1326 are plainly not the kind of comprehensive regulatory web that justifies complete ouster of state authority. And I'd also point out that the United States has filed a brief in this case where the Department of Justice states that the federal entry and reentry provisions, quote, are not the kind of comprehensive regulatory scheme sufficient to invent a clear and manifest purpose by Congress to affect a complete ouster of complementary state law. So that's the United States brief is interesting, but it creates problems of its own because it puts us in a position where if we're trying to buy off on the position of the United States, we might be changing our law every four years or so when administrations change, because certainly the position in this case has changed dramatically with the new administration. I agree that the current administration's position has changed on this topic versus the prior administration, but I mean, we believe the current administration's position is the one that is correct. Let me just ask you this. Your position is that their position is the better reasoned position, not that the fact that they're giving us their position in and of itself should mean something. I mean, I think what the plaintiffs are attempting to do here is essentially, this is something that purportedly intruding on the federal government's prerogatives and you have the current federal government is saying it is not. So I think that it is important and something that the court should... The question though is what was Congress's intent? Congress's intent hasn't changed. I mean, the statute is what the statute is and enacting the INA and others amendments to the INA. But as Judge Carson said, administrations are going to change. And so we're going to be changing or the 10th circuit's going to be changing the law every 40 years in accordance with whatever the local or the most recent policy is of the administration. No, I think courts should do what the Kansas case dictates and it's to look at the statute itself and to determine the appropriate field that is purportedly being preempted when making this analysis. And I think that the United States position on that is consistent with the state of Oklahoma's. If I could just briefly talk about standing, because I think that is an important issue here as well. This court has held that a person complaining that a government action will make his criminal activity more difficult lacks standing because his interest is not protected. I think that principle directly applies here. So that's an interesting way to put it, but the standing in this case is not necessarily making the violation of federal law easier, which is sort of what you're suggesting. The standing here has to do with the right to not be prosecuted arguably a second time in state court for violating 1326 or 1325. I mean, I still think it is attempting to make their federal law breaking easier to... How's that? I mean, they're still subject to prosecution. The penalties are arguably the same. There's nothing different about what's going to happen in the case. Is there? I would say though that it is... I mean, well, I mean, the court did preclude us from making sure that these are actual live individuals. I don't have any reason to say that they are, but I mean, it is certainly the fact that the state is not prosecuting them is making it easier to avoid federal prosecution because they're not identified. I do see that I'm almost down to a minute. If I could reserve some time for rebuttal. Well, why don't you go ahead and finish up and then I'll give you some rebuttals. Okay. I appreciate that. The other thing I just want to point out is from the dissent of Circuit Judge Strauss that he independently flagged that plaintiffs who merely allege conduct prescribed by a statute without alleging a credible threat of prosecution cannot satisfy the injury requirement for a pre-enforcement challenge outside of a First Amendment context where they're... You don't think that they've sufficiently alleged an imminent threat to them, an imminent injury? Well, I think reading Circuit Judge Strauss' dissenting opinion, those are generally shown by investigations, charges, or specific threats against these plaintiffs. There's none of that in the complaint to support that. Well, I mean, your argument would be more persuasive if you could situate it in terms of not a dissent in an Eighth Circuit opinion. I mean, it seems to me that our pre-enforcement case law applies directly here. And if you think that it doesn't, what is your best argument under our precedent or Supreme Court precedent for that proposition? Well, I mean, I guess that I do know that Circuit Judge Strauss was relying on the Susan B. Anthony List v. Dry House case that makes it clear that there has to be this credible, substantially, and sufficiently imminent threat of prosecution. That is investigations, charges. It has to be something other than just, hey, I'm violating this criminal statute. I don't think that in and of itself is sufficient on a pre-enforcement challenge. But again, I think under the Walker case, for my first point, I think is our stronger point. Is there anything in the record in this case indicating that any Oklahoma law enforcement indicated a desire to enforce this statute? Is there anything in the record that would show that Oklahoma law enforcement wasn't enforcing the statute or planned to? Or intended to, yes. I mean, I am aware that there was a couple of months where the law was in effect that I think there was one or two criminal charges that were made against individuals that had been arrested on some other charge. And it was discovered that they were also violating House Bill 4156. And those criminal charges were added to those cases. So wouldn't that just sort of in and of itself be sufficient to show that people in Oklahoma admittedly violating the law would be subject to prosecution? Yeah. Again, I think Susan B. Anthony List requires something more than just I'm violating the statute. I think it has to be, it has to still be sufficiently eminent. And just saying I'm violating the law outside of a First Amendment sort of scenario, I think requires something more. Okay. Thank you, counsel. Judge Rossman, Judge Julius, do you have any further questions? No, thank you. No. Okay. Good afternoon. May it please the court. Noor Zafar for Plaintiff Class. Over 150 years of unbroken precedent establishes that the regulation of non-citizen entry and presence is an exclusively federal field. And every single court to consider laws similar to HB 4156 has held that they are preempted. Oklahoma's merits arguments cannot overcome the weight of this unanimous authority and are squarely foreclosed by the Supreme Court's decision in Arizona. On threshold issues, the state fares no better. Plaintiffs have a cause of action and equity, and regardless of their federal status, have standing to challenge a preempted state law and need not expose themselves to retaliation for doing so. The district court did not abuse its discretion in enjoining the law, granting pseudonymity- Counsel, how do you distinguish cases like Hick and Looper, which is a case that Oklahoma is relying on, regarding the cause of action issue here? Sure, Your Honor. So in Hick and Looper, the court actually recognized in a footnote that a plaintiff who claims that federal law immunizes her from state regulation has a cause of action in equity. And plaintiffs here squarely fall within that language of Safe Students Alliance. And so we think the cause of action equity that we're asserting here is recognized by that decision. So let me ask you this. So if you were the Iowa case, you would have a group of plaintiffs who are admittedly in the country legally. For purposes of your case, your clients are here legally, as I understand it. Doesn't that make a difference on your argument that you can have a claim in equity, that you can be here in violation of one law and seek to undermine another through principles of equity? Your Honor, so I believe that the plaintiffs, or at least some of the plaintiffs in Iowa, actually were also in the country unlawfully under federal law. But with respect to your question, and I believe Your Honor may be aware of this doctrine that Oklahoma raises. So that doctrine requires a pretty high bar. It has three factors. The first is that a plaintiff must engage in unconscionable conduct. That conduct must somehow alter the relation between the two parties, and a party must be injured as a result of that conduct. And courts have not typically applied that doctrine when it would thwart public interest. And here, of course, there's a strong interest in joining a preempted state law. But even if that doctrine were to apply here, plaintiff's conduct simply does not meet that high bar of an unconscionable act. And I'm aware of no case outside of the Henry case, which is an unpublished district court opinion, where a court has applied that. In fact, Third Circuit in Lozano explicitly rejected that. Now, with respect to standing, I do want to address one of Oklahoma's arguments. Stemming from that language in Walker, and we think that language in Walker is simply inapplicable here because plaintiffs are not trying to make any future criminal conduct easier. So that language in Walker, as we understand it, may apply, for example, to, let's say, a bank robber who wants to challenge the installation of security cameras around a bank because it would make it harder for him to rob the bank in the future. Here, of course, plaintiffs are not seeking to engage in any future criminal conduct, and they have a legally protected interest in not being subject to prosecution under a preempted state law. So we simply don't think that that language in Walker would apply to plaintiffs here. Now, with respect to preemption, I'd like to start off by addressing field preemption. So field preemption has- Before you start, I had a threshold question about how we should be thinking about field preemption versus conflict preemption in this case. And if you were writing the opinion, let's say, and we had resolved this case in your favor, how would you marshal the analysis for field and conflict? Would it be enough to say that it is conflict preempted here, or would we have to engage in both flavors of preemption, so to speak? Well, Judge Rossman, you could find the law in your favor, and we believe that it's preempted under both. So with respect to field preemption, non-citizen entry is an area of dominant federal interest. It has been so for the last, you know, 150 years, and Congress has extensively legislated in this field. So both prongs of the field preemption test are met here with respect to- What exactly is the field? And I think my question is, don't- We have to define the field with great specificity, don't we? Because I don't think that your argument is, or underlying your argument, I don't think is the notion that states can't legislate at all in the immigration space. Is that your argument? No, it's not, Your Honor. Our argument with respect to how to define the field is that the field is non-citizen entry. And the way you kind of come to that definition is by looking at the framework that Congress has set up. So when you look to the INA, there's an extremely reticulated scheme that, you know, has, for example, criminal and civil penalties for irregular entry. It has different processes for removal, and it has different, you know, forms of humanitarian relief. So looking at that scheme as a whole, you can imply that the field is non-citizen entry. I do want to just distinguish, I know my colleague mentioned the Kansas case. You know, cases like Kansas, which involve generally applicable criminal laws, are not really a good guide here because those laws only had incidental impacts on immigration. And in fact, I believe the issue there was that the state had made it a crime to misrepresent information on a state tax withholding form. So it was very far afield from, of course, what we're dealing with here, where Oklahoma has set up its own immigration system that is in conflict with the federal system. What is the, in your brief, you say that the field, the preempted field is non-citizen entry and presence. Can you speak to the presence aspect of your argument? Yes, Your Honor. So that addresses the banishment provision in Oklahoma's law, because not only does it regulate entry, but people who are convicted under the entry and reentry crimes are subject to banishment from the state. And courts, such as the 11th Circuit in Alabama, the 3rd Circuit in Lozano, have held that even indirect regulations of non-citizen presence, you know, things that would make it harder for people to live in the state, would be preempted. So that's what the presence deals with. Let me ask you this. So when we're thinking about conflicts, are we thinking about conflicts with the letter of, between the letters of the law, the letter of the Oklahoma law and the letter of the federal law? Or are we also considering whether the Oklahoma law conflicts with administration priorities as far as immigration goes? Things like keeping people as material witnesses, things like making decisions not to prosecute someone or not to remove someone, you know, due to, you know, sympathetic factors, for lack of a better term. So what are we looking at as far as conflicts? Just the letter of the law, or are we considering those administration priorities as well? Your Honor, the court would look to the letter of the law and the scheme that Congress has set up. And with respect to the scheme that Congress has set up here, it has given exclusive discretion to the federal government to engage in enforcement. So the federal government chooses amongst the variety of tools that it has, while balancing competing interests in foreign policy, humanitarian concerns, to, you know, decide what action to take in a particular, in a particular case. And so that discussion... So that sounds like we're also considering administration priorities that are within the federal scheme. Not necessarily, Your Honor. We're considering the intent of Congress as it has enacted that intent through legislation. And if you look at the INA, the intent that discretion be given exclusively to federal officers is sort of present throughout the scheme. Is that the specific language you're relying on, that this broad discretion that's granted to federal officers? Well, Your Honor, I mean, the discretion is the part that makes conflict preemption here. And the Iowa court, in fact, found the law there to be conflict preempted because the state law sees discretion from federal officers. And so state officers were going around prosecuting and state judges were imposing penalties without any input from the federal government. And it could be in contradiction to what the federal government would want. So it's really about... So it sounds like we may be talking past each other in that I'm using some buzzwords that that may set off alarm bells with you, unintentionally, by the way. Yeah. So it sounds like you're considering this, you know, maybe the federal government's discretion. There are many things that the state law might do that could interfere with the federal government's discretion, because we don't know exactly what's considered in the exercise of discretion. There can be a lot of things. Well, Your Honor, the important thing is that it's the federal government making that decision and exercising that discretion. No, I know. Do you agree with me or don't agree with me? I agree in the sense that federal... It's not a trap. I mean, it's like I'm just basically reading Arizona back to you. Yes. And that's why Section 6 in Arizona was preempted, was because there the state set a unilateral arrest law that allowed state officers to arrest for removability without any input from the federal government. And there was a conflict there. Okay. Let me ask you a question about anonymity or the use of pseudonyms in this case. What's the basis? Reiterate to me the basis for the use of pseudonyms by your plaintiffs. Yes, Your Honor. So plaintiffs here face the threat of retaliation from... By who? By private parties and by the federal government. And that's something that Oklahoma does not contest. And immigration is a sensitive matter that's been recognized under this court's law. And the very injury that they're seeking to protect themselves against retaliatory prosecution could come to pass if their identities were revealed. So those are the three prongs that this court has considered in granting dole motions. So is it your suggestion that someone's immigration status is sensitive in the same way that a sexual assault victim's identity would be or that a child's identity would be sensitive? It may not be sensitive in the exact same way, but there's a spectrum and it is amongst the things that courts, including in this circuit, have considered to be sensitive information. So what's the harm other than this amorphous idea of retaliation or something like that? What did you set forth in asking for use of pseudonyms as far as harm? Well, Your Honor, the plaintiffs put forth declarations that made clear that they are longtime Oklahoma residents. They have significant responsibilities here to their communities, to their families. And if their identities were exposed, they could face retaliation. For example, some of the plaintiffs have pending applications for U visas where they've been... So who's going to retaliate against them? So in the instance of the person who has a U visa, that's a visa that's granted if someone's been the victim of a crime. So if that person's identity is revealed, perhaps the person that committed the crime against them, which was the basis for the visa, could retaliate. And then broadly, they could face retaliation from the federal government if their identities are exposed for participating in this litigation. I mean, don't we have to presume that the federal government's going to act in good faith? Sure, the court can presume that. But again, Oklahoma did not contest that the plaintiffs here could face retaliation. And the district court looked at the facts before it and made a reasoned judgment that there was a serious threat of retaliation, not only from the federal government, but also from private parties. And what's our standard of review on that issue? It's abuse of discretion, Your Honor. I guess my concern about this is, as I read the motion that you submitted to the district on this issue, we have one where I think it is Mr. Coe, I think that's right, is concerned that his wife was a victim of a crime, and that if his name was on this lawsuit, that the person who committed the crime might retaliate against him. But I don't see how that couldn't be dealt with through filing something under seal, you know, not including his contact information in the public record, that kind of thing. Well, Your Honor, this court has in the strong case allowed for, you know, if, for example, if a party challenges standing, has allowed for the district court to review identities in camera, but of course, Oklahoma is not challenged standing on this basis. But that is an option available to the court. But we believe pseudonymity is appropriate here because the district court in considering the facts before it did not abuse its discretion. And finally, I just would like to address this notion that, you know, overlapping laws, because Oklahoma's law tracks federal law and serves the same purpose that it's not preempted. So with respect to field preemption, overlap doesn't matter. Any law that interferes in the field that is exclusively federal is preempted, that's section three from Arizona. And with respect to conflict preemption, here we're dealing with an inherently federal field of immigration that implicates external sovereignty, where Congress has given broad discretion to the federal government. So under the Crosby case, for example, this is a field that even overlapping laws are simply not permitted in. Let me, would you mind just giving us a one minute exposition on your Commerce Clause alternative argument? Yes, Your Honor. So the Commerce Clause applies when states regulate, when states engage in discriminatory regulation at the border. So if the court were to find that the preemption claim is not successful here, an alternative basis for ruling on our behalf would be that Oklahoma's law violates the Commerce Clause because it regulates the entry of certain non-citizens at the border. Would the same thing be true with Oklahoma expelling people from its border once they served a sentence? Yes, Your Honor. It works both ways, so both entry and expulsion. Okay. I have one more question if that's all right, Judge. Yeah, go ahead. We've got nothing but time. Okay. So there have been a number of circuit courts that have looked at laws like this, and certainly, you know, the specifics of the state law that's before us is going to be dispositive, right? But I wanted to know what your position was on what the most persuasive cases are in this space and why. So, Your Honor, with respect to field preemption, I'd point the court to Texas because there the court found that the law which regulated entry and reentry in a substantially similar way as HB 4156 was field preempted. And with respect to conflict preemption, I'd point the court to the Iowa decision, which recently an en banc, you know, the full court upheld. And the Fifth Circuit decision has been argued en banc, but there's been no en banc decision. Is that correct? Correct, yes. And the panel decision is vacated at this point. The panel decision is vacated, so we are waiting for a decision in the en banc case. Judge Rudeis, do you have anything? I don't. Thank you, Judge Carson. Let me make sure I don't have anything else before I let you go here. Because it seems like I have so many questions. Okay, I don't think I have anything else. Thank you. Let's give Mr. Gaskins two minutes. And before you start, Mr. Gaskins, let me throw this out at you, not to use up your entire two minutes. But on this Commerce Clause idea, I mean, one of the things that struck me from the moment I read this case was, we generally don't shut the borders for people who are already in the United States. So if someone's here, we don't say you can't come to Oklahoma because you're a criminal in New Mexico, or you're unhealthy, or you're this or you're that. And by the same token, when Oklahoma lets somebody out of prison who's committed a triple homicide, we generally don't let you expel them from your state and make them go over to your neighboring states. And it just seems like the Commerce Clause argument that the plaintiffs have made is pretty persuasive in light of the way this law is drafted. Yeah, I think a couple of reactions to that. First, I think we're talking about the Dormant Commerce Clause here. And I don't think Congress has been dormant on this issue. It has already made this exact conduct a federal crime. Regardless, I think the Commerce Clause argument fails because it's grounded in a preemption theory with a different label. You know, the cases cited Edwards v. California, City of Philadelphia v. New Jersey, they were struck down laws discriminating against interstate movement of persons from other states. House Bill 4156 does not discriminate against interstate commerce. It applies to individuals who enter the United States without federal authorization, regardless of which state they come from. And the Dormant Commerce Clause protects against state laws that favor in-state interest over out-of-state competition. It has never been held to protect non-citizens who enter the country illegally from state criminal laws that apply equally, regardless of non-citizens' prior state of residence. I mean, you wouldn't disagree though. I mean, you can't send your triple murderers to all the New Jersey, can you? And ban them from living in Oklahoma. I think the state could put reasonable geographic limitations as a condition for someone being released from prison. But yeah, but this is not a situation where the state is, you know, murderers to New Jersey. Yeah, and you can't, by the same token, you can't tell all the murderers from New Jersey once they've completed their sentence that they can't come to Oklahoma. Yeah, that would be correct. Okay. Do you agree with how opposing counsel defines the field for purposes of field preemption? No, I mean, I think the field is simply entry and re-entry. I think it is the field because, I mean, those are the, that is all that Oklahoma law is criminalizing here. And there's not the level of requirements and specificity and comprehensive scheme that was like the registration requirements that were preempted in the Arizona case. So, I mean, entry and re-entry, I mean, that sounds similar to what counsel said. She also, I think, agreed that presence might be within the field she defined in her brief. Right, I think, but I think if you look at the field just as entry and re-entry, there isn't this comprehensive, there isn't the comprehensive scheme that was found preempted like the Arizona case. Again, these criminal prohibitions are very limited. There's not, you know, all the forms and all the regulations and everything that were applicable in the Arizona case as it relates to the entry and re-entry. I mean, it seems like entry and re-entry, while they sound discreet and easy, have a lot of things wrapped up into them. And if the United States has all sorts of qualifications and requirements and paperwork and decisions on whether somebody on some type of equitable basis may be able to come in or not, it seems like it may be more complicated than you're giving it credit. Sure, I would say that under Virginia Uranium v. Warren, it requires that preemption quote be discerned from the text and structure of the statute at issue and not from the overall comprehensiveness of the statute that also addresses many other things. And while the INA regulates status determinations and removal comprehensively, and it regulates alien registration comprehensively like the Arizona case, 1325 and 1326 themselves contain none of the features that make a federal scheme comprehensive to fulfill preemption purposes. Okay. Well, just not to belabor the point, but one of the things that we struggle with as a group of three is that we don't get to just look at the statute in isolation. We have to take the Supreme Court's words and try to make them fit with our analysis. And it seems like we've got some substantial instructions from Arizona that create problems for your case. You've already talked about it. I mean, that's probably more commentary than anything. Would you like to say anything about that? I just would say that I think Kansas did tighten the holding Arizona quite a bit, and it does require that the court determine the specific field that is being preempted. And it also made clear that federal law enforcement priorities are not something that is to be taken into account in determining whether there's a preemption. And I'd also just, I mean, maybe just if I can just have 20, 30 seconds. I would say that the lead plaintiff, Christopher Coe, is a clearly constitutional application of House Bill 4156. Mr. Coe says he was removed by the federal government. Then he committed felony reentry under United States Code 1326. He claims no present lawful status and is not presently eligible for any of House Bill 4156's defenses. Prosecuting him under House Bill 4156 creates no federal conflict. It furthers federal law. That application alone forecloses this facial challenge. And regardless, Mr. Coe and the other individual plaintiffs do not come into this court with clean hands. Okay, thanks. Judge Rossman, do you have any further questions for Judge Rodriguez? Oh, you're muted. All right, yeah, I do have a question. I wanted to clarify something. I think you've stated a couple times that the statute, HB 4156, criminalizes entry and reentry. But it also has an aspect of it, I think, or at least the district judge talked about the impermissible occupation, the criminalization of that. Can you explain what's the difference there? Is there a difference between the entry and reentry part of or prohibition of HB 4156? For Oklahoma to have jurisdiction over someone to prosecute them under 4156, they have to actually be in the state of Oklahoma. The state of Oklahoma cannot prosecute someone for their conduct in the state of New York. I think that really is, to me, where that distinction comes in. Well, the statute actually says that it makes it unlawful for someone to remain in the state of Oklahoma without having first obtained legal authorization to enter the United States. Is that right? Yeah, if you're quoting from the statute, that does sound familiar. That's the criminalization of presence in Oklahoma, which, as far as I can tell, no other state has ever even attempted to do that. The federal law, again, I go back to my initial point, which is federal law certainly doesn't make it a crime for mere presence. That's a civil violation. Coming into the country illegally and being present in the state of Oklahoma are two elements for you to be criminally prosecuted. You can't have one without the other. Okay. Thank you. All right. Thank you, counsel. Ms. Zafar, if you wish, give you a little extra time here. Your Honor, I would just say Arizona squarely controls this case. I haven't heard any arguments to the contrary. Both under field preemption and under conflict preemption, this law goes way beyond the law that was at issue in Arizona. It sets up a state immigration scheme that gives unilateral discretion to state officers to conduct arrests, to prosecute, and to impose penalties and banish people such as plaintiffs here from the state. We think it's preempted. Okay. Thank you. Let's see if Judge Rossman have any questions for you. No, thank you. I do not. Thank you. Okay. The case will be submitted. Counselor, excuse. Thank you both for your excellent arguments. Interesting case. I'm glad we got to do it on Zoom here where we had a little extra time so we could talk through some things a bit more. Counselor, excuse. We'll be in recess until further call. Thank you. Thank you, Your Honor.